## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL CASTALDO<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ACASTI PHARMA, INC., RODERICK CARTER, JAN D'ALVISE, JOHN CANAN, and DONALD OLDS<br><br>　　　　　　　　Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Michael Castaldo ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.　　　This is an action brought by Plaintiff against Acasti Pharma Inc. ("Acasti" or the "Company") and the members of the Company's board of directors (the "Board" or the "Individual Defendants" and, together with Acasti, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between Acasti and Grace Therapeutics Inc. ("Grace") (the "Proposed Transaction").

2.　　　On May 7, 2021, Acasti and Grace entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Acasti will acquire Grace, with existing Acasti shareholders owning at least 55% and existing Grace stockholders owning at most 45% of the outstanding capital stock of the post-close combined company on a fully-diluted basis (the

"Exchange Ratio").

3.     In order to convince the Company's public shareholders to vote in favor of the Proposed Transaction, on July 1, 2021, Defendants authorized the filing of a Form S-4 Registration Statement and joint proxy statement with the SEC (the "Proxy"). As described below, the Proxy is materially incomplete and misleading in violation of Sections 14(a) and 20(a) of the Exchange Act. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the process that culminated in the Proposed Transaction, (ii) financial projections for Acasti, Grace, and the combined company, (iii) the valuation analyses performed by Acasti's financial advisor, Oppenheimer & Co., Inc. ("Oppenheimer") in support of its fairness opinion, and (iv) potential conflicts of interest.

4.     The special meeting of the Company's shareholders to vote on the Proposed Transaction (the "Shareholder Vote") will be held on August 26, 2021, and it is imperative that the material information omitted from the Proxy be disclosed prior to the Shareholder Vote, so the Company's shareholders can properly exercise their corporate voting rights.

5.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks either to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's common shares trade on The Nasdaq Capital Market, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Acasti common stock.

10.     Defendant Acasti is a biopharmaceutical company incorporated in Québec, Canada

with headquarters in Laval, Québec, Canada. Acasti's common stock trades on the Nasdaq and the TSX Venture Exchange under the ticker symbol "ACST."

11.     Defendant Roderick Carter ("Carter") is, and has been at all relevant times, a director and Chairman of the Board of Acasti.

12.     Defendant Jan D'Alvise ("D'Alvise") is, and has been at all relevant times, a director, President and Chief Executive Officer of Acasti.

13.     Defendant John Canan ("Canan") is, and has been at all relevant times, a director of Acasti.

14.     Defendant Donald Olds ("Olds") is, and has been at all relevant times, a director of Acasti.

15.     Defendants identified in paragraphs 11 through 14 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Relevant Corporate Background

16.     Acasti is a biopharmaceutical company focused on the research, development, and commercialization of cardiometabolic prescription drugs using omega-3 or OM3 fatty acids delivered both as free fatty acids and bound-to-phospholipid esters, derived from krill oil. Acasti's lead product candidate was CaPre®, an OM3 phospholipid therapeutic for the treatment of hypertriglyceridemia.

17.     Grace is a Delaware corporation headquartered in East Brunswick, New Jersey. Grace is a privately held emerging biopharmaceutical company focused on developing innovative drug delivery technologies for the treatment of rare and orphan diseases. Grace's therapeutic

pipeline consists of three unique clinical stage and multiple pre-clinical stage assets supported by an intellectual property portfolio consisting of more than 40 granted and pending patents in various jurisdictions worldwide.

## II.    Background to the Proposed Transaction

18.    The Proxy indicates that, following disappointing topline results for its TRILOGY 1 and TRILOGY 2 trials, in September 2020, the Company began to explore potential strategic transactions, including with Company A, which had made a non-binding merger offer.  **The Proxy, however, does not disclose the terms and/or value of Company A's offer, other than stating that the Board determined it did not provide adequate value.**

19.    As a result, the Board determined to consider other alternatives with the intent to conduct a canvassing of potential strategic opportunities, and engaged Oppenheimer as financial advisor to assist in conducting a broad strategic review process. The Board similarly determined that a reverse-merger transaction was the most realistic strategic alternative. To that end, on September 29, 2020, Acasti issued a press release announcing that it had commenced a process to explore and evaluate strategic alternative, including an acquisition, merger, reverse merger, other business combination, sales of assets, and licensing or other strategic transactions involving Acasti, or a combination of these options.

20.    Following the public announcement, Oppenheimer commenced outreach. In the period between September 2020 and early January 2021, 18 companies signed a confidentiality agreement with Acasti, which included standstill provisions. **Notably however, the Proxy fails to disclose whether these confidentiality agreements – including any confidentiality or non-disclosure agreement with Company A – also included "don't ask, don't waive" conditions and/or whether the standstill provisions have fallen away or are still in effect.**

21.     By the end of October 2020, the Company had received written initial indications of interest from 21 companies, all of which were structured as reverse merger transactions. Following discussion, the Board selected four companies, consisting of Company B, Company C, Company D, and Company E, as transaction candidates that should proceed to the next round of the strategic review process. The Proxy provides a "brief summary" of the proposals received from these counterparties **but notably fails to disclose whether any of the proposals discussed or otherwise contemplated the post-close governance structure and/or composition of the combined company board of directors.**

22.     Thereafter, the Company continued to engage in discussions with and perform due diligence on Companies B, C, D, and E. Then, "[o]n January 12, 2021, following a general shift in stock market conditions that started in December 2020 with an upward trend in the Company's share price, and an improved cash position of Acasti through capital raises under its ATM, Grace entered into the process and its financial advisor, William Blair & Company, L.L.C. ("William Blair"), submitted an initial indication of interest to representatives of Oppenheimer for a reverse merger transaction." **It is unclear from the Proxy whether Grace was included in Oppenheimer's initial outreach, and the Proxy does not provide any additional information regarding the method by which Grace "entered into the process" (*i.e.*, whether Grace had prior discussions and/or a prior affiliation with the Company or Company insiders).**

23.     The Board convened on January 28 and 30, 2021, wherein it identified Grace, Company B, and Company C as the finalists in the strategic review process. The Proxy indicates that Company D and E were not selected as finalists "for different reasons, including their relatively low valuation of Acasti (particularly given Acasti's higher market capitalization at that time)." Notably however, Companies B and C each valued Acasti at approximately $27.5 million,

with a post close ownership for Acasti shareholders of 15.9% and 9.9%, respectively, while Companies D and E valued Acasti at $30 million and $32.5 million, respectively, and post-close ownership of 9.3% and 17.3%, respectively. There is no indication in the Proxy that these parties revised their proposals. Thus, it appears that Companies D and E valued Acasti higher than Companies B and C, and that Company E had a superior offer to Companies B and C in terms of valuation and the post-close ownership for Acasti's current shareholders.

24.     According to the Proxy, "[a]t the same meeting, representatives of Oppenheimer discussed with the [Board] and management the implications of Acasti's recent significantly higher market capitalization and stronger cash position for a potential transaction" and the Board "formulated as an objective that ownership consideration for Acasti shareholders offered by the finalists in the process should be negotiated upwards to better align with the value ascribed by the market to Acasti, and its stronger cash position." The Board also determined to consider if, in the event of a successful upward negotiation of valuation, a transaction could be structured as an acquisition by Acasti, with potential additional benefits, in addition to the greater ownership by Acasti shareholders. Inexplicably, however, the Board would thereafter approve entering into a 30-day exclusivity agreement with Company C to explore in more detail whether a transaction with Company C could be entered into, despite Company C's proposal contemplating a lower post-close ownership for current Acasti shareholders than Company B and Grace. Ultimately no mutually acceptable structure emerged from discussions between Acasti and Company C and the parties terminated the exclusivity agreement.

25.     Acasti's share price continued to rise through January and February 2021, reaching $1.20 by February 10, 2021, resulting in a market capitalization for Acasti of approximately $230 million as of that date. Continued access to its ATM program and exercises of outstanding warrants

enabled Acasti to raise over $50 million between December 2020 and February 2021, ultimately providing Acasti with $61 million in cash as of March 31, 2021. As a result, in the context of the three finalists that were still part of the process in February 2021, this necessitated a renegotiation of their proposals to reflect such higher valuation, with a shift of the transaction structure from a reverse take-over to an acquisition in which, after issuance of Acasti shares as acquisition consideration, current Acasti shareholders would continue to hold more than 50% of the outstanding shares of the combined company (on a non-diluted basis) at the closing of the transaction. The Board instructed Oppenheimer to present non-binding acquisition proposals to each of three finalists, reflective of Acasti's higher market valuation at that time. **The Proxy again fails to disclose the terms of these proposals, including whether Acasti included governance and/or management terms.**

26.     Only Grace was accepting of substantially all of the key materials terms of Acasti's proposal. Thereafter, the Company entered into exclusivity with Grace and from the end of February 2021 until May 6, 2021, the Company and Grace negotiated the Proposed Transaction.

27.     On May 7, 2021, Acasti issued a press release announcing the Proposed Merger, which states in relevant part:

**Acasti Announces Definitive Agreement to Acquire Grace Therapeutics, Inc.**

*Grace provides Acasti with a pipeline of rare and orphan disease programs, including 3 clinical stage assets that have received Orphan Drug Designation from the FDA*

*Expects lead asset to complete PK Bridging Study in early 2022, with potential to advance directly into a Phase 3 clinical safety trial for Subarachnoid Hemorrhage*

*Combination creates a unique rare disease company with innovative drug delivery technologies, and is expected to have ~$64M in cash at closing to advance lead clinical assets*

LAVAL, Québec, May 07, 2021 (GLOBE NEWSWIRE) -- Acasti Pharma, Inc. ("Acasti" or the "Company") (Nasdaq: ACST and TSX-V: ACST) announces it has entered into a definitive agreement to acquire Grace Therapeutics, Inc. ("Grace"), a privately held emerging biopharmaceutical company focused on developing innovative drug delivery technologies for the treatment of rare and orphan diseases (the "Proposed Transaction"). Subject to the completion of the Proposed Transaction, Acasti will acquire Grace's pipeline of drug candidates addressing critical unmet medical needs with the potential to deliver significant value to patients and providers. It is anticipated that the cash at closing of about $64 million will be principally used to pursue the clinical development of the first two assets through Phase 3, and further advance earlier pipeline assets into the clinic. The Proposed Transaction has been approved by the boards of directors of both companies and is supported by Grace shareholders through voting and lock-up agreements with the Company. The transaction remains subject to approval of Acasti stockholders, as well as applicable stock exchanges.

The Company has posted a presentation summarizing key highlights of the transaction, which is available on both the Acasti and Grace websites. Acasti plans to file the required Form S-4 proxy statement with the U.S. Securities & Exchange Commission (SEC), which will include detailed disclosures regarding the transaction. Following the filing of the required Form S-4, Acasti and Grace management plan to host an investor conference call to further discuss the anticipated benefits of the acquisition and answer investor questions. Acasti will call a shareholder meeting to approve the transaction following the public filing of the Form S-4 proxy statement. As the Proposed Transaction moves forward, Acasti continues to evaluate strategic options for value creation from its existing assets.

In connection with the Proposed Transaction, Acasti will acquire Grace's entire therapeutic pipeline consisting of three unique clinical stage and multiple pre-clinical stage assets supported by an intellectual property portfolio consisting of more than 40 granted and pending patents in various jurisdictions worldwide. Grace's product candidates aim to improve clinical outcomes by applying proprietary formulation and drug delivery technologies to existing pharmaceutical compounds to achieve improvements over the current standard of care or provide treatment for diseases with no currently approved therapy. Grace's three lead programs have all received Orphan Drug Designation from the U.S. Food & Drug Administration (FDA), which could provide up to seven years of marketing exclusivity in the United States upon FDA's approval of the New Drug Application (NDA), provided that certain conditions are met.

*** 

Roddy Carter, chairman of Acasti, commented on the transaction, "We have diligently pursued a thorough strategic process to evaluate a range of value-creating alternatives. We believe that combining Grace's innovative research programs and scientific talent with Acasti's financial resources and drug development and

commercialization expertise position us to build a portfolio of innovative therapeutics that will address unmet medical needs. The Acasti and Grace boards have approved this transaction, which is also supported by Grace shareholders, and we highly recommend that our shareholders also approve it."

Jan D'Alvise, chief executive officer of Acasti, stated, "We believe that Grace's assets represent a transformative opportunity for Acasti, as their novel drug delivery technologies used to develop new therapies could improve upon existing compounds with known safety profiles and provide an attractive path to drug development and commercialization. We believe Grace's product portfolio has the potential to provide better patient solutions with enhanced efficacy, faster onset of action, reduced side effects, convenient delivery, and increased patient compliance. For these and other reasons, we are very excited about the therapeutic potential of Grace's pipeline, and we believe there could be significant international licensing and marketing opportunities for these assets."

Vimal Kavuru, co-founder and chairman of Grace, noted, "Merging with Acasti is a significant opportunity for Grace, as it allows us to partner with an experienced team, well-versed in drug development and commercialization, with a strong commitment to the highest standards of corporate governance. As a result of the merger, we anticipate the combined company will have the financial resources to fund our lead programs to critical value inflection points. Our board of directors have approved the proposed transaction with Acasti, which is also supported by Grace's shareholders."

"We believe our dedication to bringing new, safe and effective medicines to patient populations where there is significant unmet medical need is shared by the management and board of Acasti. We look forward to a successful future together and driving value for our combined shareholders," noted S. George Kottayil, Ph.D., co-founder and chief executive officer of Grace.

**Management and Operations**

Upon shareholder approval of the Proposed Transaction, the combined companies will be led by Jan D'Alvise as president and chief executive officer, and the corporation will continue to maintain its corporate headquarters in Laval, Quebec, Canada. All Grace employees will transition to Acasti and they will continue to maintain an R&D laboratory and commercial presence in North Brunswick, New Jersey. The new Board of Directors will be composed of 4 representatives from Acasti and 3 from Grace, with more details to be provided in the proxy statement.

**About the Proposed Transaction**

Pending approval by Acasti shareholders as well as applicable stock exchange approvals, Grace will merge with a new wholly owned subsidiary of Acasti. Grace stockholders will receive newly issued Acasti common shares pursuant to an

exchange ratio formula set forth in the definitive agreement. Under the terms of the definitive agreement, immediately following the consummation of the Proposed Transaction, Acasti's securityholders on a pro forma basis would own approximately 55% of the combined company's common shares, and Grace's securityholders would own approximately 45% of the combined company's common shares, in each case calculated on a fully-diluted basis, subject to upward adjustments in favor of Acasti based on each company's capitalization and net cash balance as set forth in the definitive agreement, with more details to be provided in the proxy statement. For illustrative purposes, assuming no adjustments for each company's capitalization and net cash balance, and based on 208,375,549 common shares of Acasti currently issued and outstanding, an aggregate of 170,489,086 common shares of Acasti would be issued to Grace stockholders as consideration for the Proposed Transaction.

## III.    The Proxy Omits Material Information

28.    In connection with the Proposed Transaction, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy to ensure it did not contain any material misrepresentations or omissions before it was filed and disseminated to the Company's shareholders. However, the Proxy misrepresents or omits material information necessary for the Company's shareholders to make an informed decision regarding the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

A.    <u>Material Misrepresentations or Omissions Related to Grace</u>

29.    The Proxy indicates that, following the completion of the Proposed Transaction, the Board will be comprised of: (i) William A. Haseltine and Vimal Kavuru, each a current director of Grace; (ii) one (1) individual to be designated by Grace stockholders representing a majority of the Acasti common shares held by such Grace stockholders at the relevant time; and (iii) Individual Defendants Carter, Canan, D'Alvise, and Olds, each a current director of Acasti. Also following the completion of the Proposed Transaction, D'Alvise, Chief Executive Officer of Acasti, will remain as the Chief Executive Officer of the combined company.

30.     Concerningly however, Grace's equity ownership and voting power are concentrated amongst a small group of shareholders:

Except as otherwise indicated in the table below, addresses of named beneficial owners are c/o Grace Therapeutics Inc., 2 Tower Center Boulevard, Suite 1101G, East Brunswick, NJ 08816.

| | Total Number of Class A Shares Beneficially Owned | Percentage of Class A Common Stock Beneficially Owned |
|---|---|---|
| **5% or Greater Stockholders:** | | |
| Rajitha Grace 2018 Irrevocable Trust[1] | 6,600,000 | 33.0% |
| Kavuru 2017 Grace Therapeutics LLC Irrevocable Family Trust[2] | 3,600,000 | 18.0% |
| Shore Pharma LLC[3] | 3,329,000 | 16.6% |
| S. George Kottayil | 2,950,000 | 14.8% |
| SS Pharma LLC[4] | 2,200,000 | 11.0% |
| Kottayil Grace Pharma LLC[5] | 1,050,000 | 5.3% |
| **Executive Officers and Directors:** | | |
| Vimal Kavuru | 3,329,000 | 16.6% |
| Subha Thogarchedu | 2,200,000 | 11.0% |
| S. George Kottayil | 4,000,000 | 20.1% |
| All current executive officers and directors as a group (three persons) | 9,529,000 | 47.7% |

The Proxy indicates that the trustee of the Rajitha Grace 2018 Irrevocable Trust is Swami Sambamurty; the trustee of the Kavuru 2017 Grace Therapeutics LLC Irrevocable Family Trust is Sudha Kavuru; and the remaining shareholder entities' sole members are Grace insiders.

31.     However, and <u>first</u>, the Proxy fails to disclose whether Swami Sambamurty and/or Sudha Kavuru have any material relationship and/or connection to Grace's executive officers and/or directors (including any relationship between Vimal Kavuru and Sudha Kavuru). This information is material because the Proposed Transaction and Exchange Ratio contemplate existing Grace stockholders owning up to 45% of the combined post-close company. Thus, following the Proposed Transaction, if the existing Grace stockholders were to act as a group, they could exert substantial control over the outcome of all matters submitted to the Company's shareholders for approval.

32.     Indeed, to this point, in connection with the execution of the Merger Agreement, Acasti entered into voting agreements with certain Grace stockholders who own in the aggregate approximately ***98%*** of the outstanding shares of Grace Class A common stock as of June 30, 2021, which suggests that nearly all of Grace's stockholders act in near unison.

12

B.    Material Misrepresentations or Omissions Regarding the Process

33.    As described above, the Proxy fails to disclose material information related to the process that culminated in the Proposed Transaction.

34.    Specifically, and second, the Proxy fails to disclose sufficient information regarding the material terms of the proposals received by the Company during the process, including whether the proposals addressed governance, management, and/or board composition of the post-close combined company.

35.    Third, the Proxy fails to disclose whether Grace was included in Oppenheimer's initial outreach, and the Proxy does not provide any additional information regarding the method by which Grace "entered into the process" (*i.e.* whether Grace had prior discussions and/or a prior affiliation with the Company or Company insiders).

36.    Fourth, the Proxy fails to disclose whether the confidentiality agreements executed by the Company included "don't ask, don't waive" conditions and/or whether the standstill provisions have fallen away or are still in effect.

37.    These material non-disclosures relate to the Board's motivations and their potential conflicts of interest in evaluating the proposals received from Grace and Companies B, C, D, and E. Indeed, whether the various proposals contemplated governance matters, management roles, and/or board composition of the post-close combined company is material to shareholders evaluation of the process and the Board's rationale for engaging with certain counterparties.[1]

C.    Material Misrepresentations or Omissions Regarding the Financial Advisor

38.    The Proxy also fails to disclose material information regarding the financial

---

[1]    Notably, two members of the Board (Defendants Canan and Olds) list "Corporate Director" as their "principal occupation." Both (as well as Defendants Carter and D'Alvise) are expected to serve on the board of the post-close combined company.

analyses performed by Oppenheimer.

39.     Specifically, and <u>fifth</u>, the Proxy fails to disclose the individual multiples observed by Oppenheimer in its *Selected Public Companies Analyses* and *Selected Transactions Analysis*.

40.     <u>Sixth</u>, with respect to Oppenheimer's *Discounted Cash Flow Analysis*, the Proxy states that Oppenheimer relied upon "financial forecasts and estimates related to Grace prepared by the management of Grace, *as adjusted by management of Acasti*," and that, for its analysis, Oppenheimer "calculate[ed] the estimated present value of the standalone after-tax free cash flows *that Grace management forecasted* to be generated during the calendar years ending December 31, 2021 through the calendar year ending December 31, 2031" (emphasis added). Thus, it is unclear whether Oppenheimer used the original forecasts prepared by Grace's management or those forecasts as adjusted by Acasti.

41.     Similarly, in summarizing the *Discounted Cash Flow Analysis* prepared by Oppenheimer, the Proxy fails to disclose the following key information: (i) the actual unlevered free cash flows used in the analysis, (ii) the inputs and assumptions underlying each discount rate range (including the values of the company-specific WACC/CAPM components), and (iii) the actual terminal values calculated for the analysis.

D.      <u>Material Misrepresentations or Omissions Regarding the Financial Projections</u>

42.     <u>Seventh</u>, the Proxy entirely omits any financial projections for Acasti, Grace, or the combined company (the "Omitted Projections").

43.     The Omitted Projections served as a material factor in the Acasti Board's decision to approve the Proposed Transaction and for Oppenheimer to find the equity exchange ratio "fair" to Acasti's shareholders. The Omitted Projections are plainly material and speak squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of

the Proposed Transaction: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Without the Omitted Projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Transaction. The omitted financial projections are plainly material to shareholders and must be disclosed.

\* \* \*

44.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

48.     The omission of information from a registration statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

49.     Defendants have issued the Proxy with the intention of soliciting the Company's public common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, *inter alia*, the process that culminated in the Proposed Transaction and the financial analyses and financial projections relied upon by the Board.

50.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

51.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.

The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Indeed, the Individual Defendants were privy to and had knowledge of the process leading up to the signing of the Merger Agreement and preparation and review of the Proxy. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

52.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of the Proxy.

53.     Acasti is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Acasti within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

59.     In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

      D.     Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 3, 2021

**OF COUNSEL**

**KAHN SWICK & FOTI, LLC**
Michael J. Palestina
Brian C. Mears
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: 504.455.1400
Direct: 504.648.1843
Facsimile: 504.455-1498
michael.palestina@ksfcounsel.com
brian.mears@ksfcounsel.com

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*