# MONTEVERDE & ASSOCIATES PC
## ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE, SUITE 4405
NEW YORK, NEW YORK 10118

**Juan E. Monteverde**
jmonteverde@monteverdelaw.com

August 13, 2021

**VIA ECF & E-MAIL**

Hon. Katherine Polk Failla, U.S.D.J.
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:   *Lauden Bisel v. Acasti Pharma Inc., et al.*, No. 1:21-cv-06051-KFP;
      *Michael Castaldo v. Acasti Pharma Inc. et al.*, No. 1:21-cv-06567-KFP

Dear Judge Failla:

We represent Plaintiffs in the above referenced actions (the "Actions") and write in response to Defendants' August 10, 2021, letter requesting permission to file a motion to dismiss and seeking consolidation of the Actions ("Defendants' Pre-Motion Letter"). The Actions challenge the acquisition of Grace Therapeutics Inc. ("Grace") by Acasti Pharma, Inc. ("Acasti" or the "Company") and allege violations of Section 14(a) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the proposed merger between Acasti Pharma U.S., Inc., a wholly-owned subsidiary of Acasti and Grace (the "Proposed Merger"). As an initial matter, Plaintiffs consent to consolidation of the Actions. With respect to Defendants' request to file a motion to dismiss, the Proposed Merger is subject to a shareholder meeting on August 26, 2021 (the "Shareholder Vote"). The Shareholder Vote may be outcome determinative on the allegations raised in the Actions, depending on vote results. Accordingly, Plaintiffs submit that briefing on any motion to dismiss should not take place until after the Shareholder Vote.

Addressing the substantive arguments and cited case law in Defendants' Pre-Motion Letter, Defendants marginalize the purpose of Section 14(a) of the Exchange Act, which provides that proxy communications shall not contain "any statement which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9. The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of inadequate disclosure in proxy solicitation." *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977) (discussing the "philosophy of full disclosure" underlying Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder).

In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Acasti, Grace, and the combined company, (ii) the

---

Telephone (212) 971-1341         www.monteverdelaw.com         Facsimile (212) 202-7880

valuation analyses performed by Acasti's financial advisor, Oppenheimer & Co., Inc. ("Oppenheimer") in support of its fairness opinion, (iii) the potential conflicts of interest of Oppenheimer, and (iv) the sales process leading up to the Proposed Merger.

First, The Omitted Projections served as a material factor in the Acasti Board's decision to approve the Proposed Merger and for Oppenheimer to find the equity exchange ratio "fair" to Acasti's shareholders. The Omitted Projections are plainly material and speak squarely to the question that the Company's shareholders must answer: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Courts have consistently recognized that financial projections and forecasts are of special importance to shareholders because they contain unique insights into the value of the company unattainable elsewhere. *See In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. Mar. 14, 2007) ("[S]tockholders would obviously find it important to know what management and the company's financial advisor's best estimate of those future cash flows would be…. It would therefore seem to be a genuinely foolish (and arguably unprincipled and unfair) to hold that the best estimate of the company's future returns, as generated by management and the Special Committee's investment bank, need not be disclosed…."); *Karp v. First Conn. Bancorp, Inc.*, No. RDB-18-2496, 2019 U.S. Dist. LEXIS 162819 (D. Md. Sep. 24, 2019) (denying a motion to dismiss Section 14(a) claim on the basis of omitted cash flow projections); *In Nichting v. DPL Inc*, No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, at *17 n.16 (S.D. Ohio July 15, 2011) ("it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision"); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968) ("Material facts include not only information disclosing the earnings and distributions of a company but also those facts which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities.").

Second, Defendants concede the materiality of Oppenheimer's fairness opinion by including it and its valuation analyses among the factors considered in recommending the Proposed Merger. Proxy at 105. However, the summary of Oppenheimer's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, Acasti's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Oppenheimer's fairness opinion in determining whether to vote in favor of the Proposed Merger. Courts have recognized that such "key assumptions" or "key inputs", *i.e.* financial assumptions utilized by a banker in its analyses that significantly impact the final valuation figure arrived at, are material to shareholders. *See In re Pure Res. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002); *Smith v. Robbins & Myers*, 969 F. Supp. 2d 850, 872-74 (S.D. Ohio 2013) (finding omitted multiples constituted material, "critical financial" information, that was necessary for the company's shareholders to make an informed decision in connection with the merger). The result of the analysis may be false or misleading if underlying assumptions or key inputs are omitted or misrepresented *City of Hialeah Emples. Ret. Sys. v. FEI Co.*, No. 3:16-cv-1792-SI, 2018 U.S. Dist. LEXIS 11989 (D. Or. Jan. 25, 2018).

Third, the Proxy fails to disclose potential conflicts of interest involving Oppenheimer. Courts have consistently emphasized, "[i]nformation that bears on whether an investment bank faces conflicts of interest is material to stockholders when deciding how to vote on a merger. *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 105 (Del. Ch. 2014); *accord Wilson v. Great*

August 13, 2021
Page **3** of **3**

*Am. Indus.*, 855 F.2d 987, 995 (2d Cir. 1988) ("[A] failure to disclose a relationship between interested parties that might assume significance in the deliberations of a reasonable shareholder is within the province of the federal securities laws, and that disclosure of such various interests, will give notice to a shareholder to examine the proposed transaction more critically."); *see also Vento v. Curry*, No. 2017-0157-AGB, 2017 Del. Ch. LEXIS 45, at *6 (Del. Ch. 2017) (granting a preliminary injunction for failure to fully disclose Morgan Stanley's compensation and involvement with financing the merger). Federal regulations require disclosure of this information. *See* 17 C.F.R. § 229.1015(b)(4).

Fourth, the Proxy, fails to disclose whether Acasti entered into a confidentiality or nondisclosure agreement with potential strategic partner "Company A" and if so, whether the agreement contained standstill and/or "don't ask don't waive" ("DADW") provisions. As former Chief Justice Strine explained, DADW provisions are "powerful tool[s]" and courts have an "inescapable obligation" to ensure that if they have been used, they are adequately disclosed to shareholders. *In re Ancestry.com. Inc*, Consol. C.A. No. 7988-CS, 226-30 (Del. Ch. 2012); *see also In re Ancestry.com. Inc.*, 2012 Del. Ch. LEXIS 294 (Ch. Dec. 19, 2012) (granting injunction until supplemental disclosure revealing existence of standstill and DADW provisions issued); *In re Celera Corp. S'holder Litig.*, No. 6304-VCP, 2012 Del. Ch. LEXIS 66, at *79-81 (Del. Ch. Mar. 23, 2012) (noting how standstill provisions can be "problematic" because they foreclose interested parties from making superior offers).

Finally, under Section 14(a), the causation requirement is satisfied where, as here, the challenged proxy statement is "an essential link in the accomplishment of the transaction." *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 389, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970). Stockholders may satisfy the "essential link" requirement by alleging former stockholders were precluded from casting a fully informed vote in connection with a merger (proximate causation) and the merger consideration was inadequate (economic loss), thereby making the Proxy an essential link in damaging stockholders. *Hot Topic*, 2014 U.S. Dist. LEXIS 180513, at *27-29 (citing *Mills* 396 U.S. at 384).

Therefore, Defendants' contentions that Plaintiffs have failed to allege a viable Section 14(a) claim are unavailing.  In any event, fact specific issues of this nature should be decided at trial or on summary judgment, not at this stage of the proceedings.

Counsel is available should the Court have any questions.

Respectfully,

*/s/ Juan E. Monteverde*

Juan E. Monteverde

cc:   Michael Palestina (co-counsel for Plaintiff Michael Castaldo)